1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Daniel Wayne Cook,                    )   No. CV 11-557-PHX-RCB
                                          )
10              Plaintiff,                )   <u>Death Penalty Case</u>
                                          )
11   vs.                                  )
                                          )   **ORDER**
12                                        )
     Janice K. Brewer, et al.,            )
13                                        )
                Defendants.               )
14                                        )
                                          )
15   _____

16          Plaintiff Daniel Wayne Cook, who is an Arizona prisoner under sentence of death, is

17   scheduled to be executed at 10:00 a.m. on April 5, 2011.  He has filed a civil rights

18   Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*.

19   Because the Complaint fails to state a claim upon which relief may be granted, the Court will

20   dismiss the action.

21   **I.     Application to Proceed *In Forma Pauperis* and Filing Fee**

22          Plaintiff's Application to Proceed *In Forma Pauperis* will be granted.  28 U.S.C.

23   § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1).

24   The Court will assess an initial partial filing fee of $14.86.  The remainder of the fee will be

25   collected monthly in payments of 20% of the previous month's income each time the amount

26   in the account exceeds $10.00.  28 U.S.C. § 1915(b)(2).  The Court will enter a separate

27

28

1   Order requiring the appropriate government agency to collect and forward the fees according
2   to the statutory formula.

3   **II.    Statutory Screening of Prisoner Complaints**

4          The Court is required to screen complaints brought by prisoners seeking relief against
5   a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.
6   § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised
7   claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
8   be granted, or that seek monetary relief from a defendant who is immune from such relief.
9   28 U.S.C. § 1915A(b)(1), (2).

10         A pleading must contain a "short and plain statement of the claim *showing* that the
11  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not
12  demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
13  unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).
14  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
15  statements, do not suffice."  *Id.*

16         "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
17  claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550
18  U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that
19  allows the court to draw the reasonable inference that the defendant is liable for the
20  misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for
21  relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
22  experience and common sense."  *Id.* at 1950.  Thus, although a plaintiff's specific factual
23  allegations may be consistent with a constitutional claim, a court must assess whether there
24  are other "more likely explanations" for a defendant's conduct.  *Id.* at 1951.

25  **III.   Complaint**

26         In his two-count Complaint, Plaintiff sues the following Defendants: Arizona
27  Governor Janice K. Brewer, Arizona Department of Corrections (ADC) Director Charles L.
28  Ryan, Eyman Unit Warden Ernest Trujillo, Florence Unit Warden Carson McWilliams, and

1   Does 1-50.  In Count One, Plaintiff alleges that the State's use of a non-FDA-regulated

2   substance (sodium thiopental) manufactured in a foreign country creates a substantial and

3   unnecessary risk of serious harm in violation of his rights under the Eighth Amendment.  In

4   Count Two, Plaintiff alleges that the administration of a non-FDA-regulated substance from

5   a foreign source by a medical doctor or other trained medical professional demonstrates

6   deliberate indifference to his right to be free from cruel and unusual punishment under the

7   Eighth Amendment.  In his Prayer for Relief, Plaintiff seeks a declaratory judgment and

8   temporary, preliminary, and permanent injunctive relief.[1]  The Court has reviewed the

9   Complaint.  For the reasons that follow, the Court concludes that Plaintiff has failed to state

10  a claim upon which relief may be granted.  28 U.S.C. § 1915A(b)(1).

11          **A.     Background**

12          In 1988, Plaintiff was convicted and sentenced to death on two counts of first-degree

13  murder in the brutal deaths of two acquaintances.  The facts surrounding the crimes are set

14  forth in the Arizona Supreme Court's decision affirming the convictions and sentences on

15  appeal.  *See State v. Cook*, 170 Ariz. 40, 45-46, 821 P.2d 731, 736-37 (1991).  Subsequent

16  petitions for state post-conviction and federal habeas corpus relief were denied.

17          Because Plaintiff committed his crimes before November 23, 1992, he has the choice

18  to be executed by either lethal injection or lethal gas.  *See* Ariz. Rev. Stat. § 13-757(B).  If

19  he does not choose a method of execution, ADC must use lethal injection to execute him.

20  _____

21          [1]      The Court notes that Plaintiff's request for interim injunctive relief was
    improperly made within his case commencing pleading – the Complaint.  Petitioner did not
22  submit a request for a temporary restraining order or a preliminary injunction to stay his
23  impending April 5 execution in a separate motion.  *Compare* Fed. R. Civ. P. 7(a)
    ("Pleadings") *with* Fed. R. Civ. P. 7(b) ("Motions").  Nonetheless, because the Court herein
24  determines that Plaintiff has failed to state a claim for relief, it is evident he could not meet
    the standard for injunctive relief.  *See Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct.
25  365, 374, 376 (2008) (to be entitled to injunctive relief, a movant must demonstrate that he
26  is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence
    of preliminary relief, that the balance of equities tips in his favor, and that an injunction is
27  in the public interest); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005).

28

*Id.*  Similar to other states, Arizona's protocol for execution by lethal injection requires sequential administration of sodium thiopental, pancuronium bromide, and potassium chloride.  "It is uncontested that, failing a proper dose of sodium thiopental that would render [a] prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride."  *Baze v. Rees*, 553 U.S. 35, 53 (2008).

On September 24, 2010, the State of Arizona filed in the Arizona Supreme Court a motion for a warrant of execution for Plaintiff.  On November 10, 2010, Plaintiff filed a § 1983 complaint which raised the same two claims he has presented in the instant complaint.  On January 26, 2011, the Court dismissed the complaint for failure to state a claim upon which relief could be granted.  On February 8, the Arizona Supreme Court set Plaintiff's execution for April 5, 2011.  On March 16, the Ninth Circuit Court of Appeals affirmed this Court's order dismissing Plaintiff's complaint.  *Cook v. Brewer*, No. 11-15303, 2011 WL 902111 (9th Cir. Mar. 16, 2011).  The instant Complaint was filed on March 24.

**B.  Claim One – Substantial Risk of Serious Harm**

**1.  Plaintiff's Allegations**

Plaintiff alleges that ADC intends to execute him using sodium thiopental acquired from a non-FDA-regulated company in Great Britain and that the drug is not fully potent because British Pharmacopeia defines sodium thiopental for injection to be a mixture containing the equivalent of not less than 84% and not more than 87% of thiopental where as United States Pharmacopeia defines sodium thiopental for injection to contain not less than 93% and not more than 107%.  Consequently, according to Plaintiff, ADC will fail to properly anesthesize him because its lethal injection protocol is based on drugs produced in the United States.

Plaintiff next alleges that unapproved foreign drugs are presumptively unsafe and ineffective because FDA regulation ensures that a product is free of potentially harmful contaminants and that the product actually contains the amount and concentration of the drug indicated on the label.  He further alleges that ADC obtained its supply of sodium thiopental

in violation of federal law and that its supplier, Dream Pharma, did not conform with FDA's regulations or take "the necessary steps" to preserve the sodium thiopental. Plaintiff also alleges that ADC's sodium thiopental was produced in Austria by a German company called Sandoz International GmbH and that the FDA in the past criticized Sandoz's failure to distinguish between animal drugs and those intended for human consumption and voiced concerns that Sandoz's manufacturing plant failed to develop written procedures and an environmental monitoring system to prevent contamination.

Plaintiff further alleges that the sodium thiopental ADC purchased from Dream Pharma is ineffective, adulterated, or otherwise substandard because the Medicines and Healthcare Regulatory Agency in the United Kingdom reported that there have been twelve "adverse reaction reports" concerning sodium thiopental in the past two years and that five of these related to the drug's efficacy. He also asserts that the drugs imported by ADC were formulated for animals, not humans.

Based on these factual allegations, Plaintiff asserts there is a substantial risk injection of ADC's sodium thiopental could cause pain and suffering because it is contaminated, compromised, or substandard. He further alleges there is a substantial risk he will experience excruciating pain from administration of the second and third drugs during his execution because sodium thiopental obtained from a non-FDA-regulated foreign source will not properly anesthesize him.

### 2. Analysis

The Eighth Amendment "prohibits punishments that involve the unnecessary and wanton inflictions of pain, or that are inconsistent with evolving standards of decency that mark the progress of a maturing society." *Cooper v. Rimmer*, 379 F.3d 1029, 1032 (9th Cir. 2004). That prohibition necessarily applies to the punishment of death, precluding executions that "involve torture or a lingering death, or do not accord with the dignity of man." *Beardslee v. Woodford*, 395 F.3d 1064, 1070 (9th Cir. 2005). A violation of the Eighth Amendment can be established by demonstrating there is a risk of harm that is "*sure or very likely* to cause serious illness and needless suffering." *Brewer v. Landrigan*, 131 S.

1  Ct. 445, 445 (2010) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008), and *Helling v. McKinney*,

2  509 U.S. 25, 33 (1993)).  In other words, there must be a "substantial risk of serious harm."

3  *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  The Court finds that Plaintiff has failed to

4  state a facially plausible claim for relief under the Eighth Amendment.

5       First, the court in *Cook* found Plaintiff's allegations concerning the presumptive

6  ineffectiveness of imported non-FDA regulated foreign drugs to be conclusory and without

7  any supporting factual allegations.  2011 WL 902111 at *3.  Second, in separate litigation

8  concerning Arizona's lethal injection protocol, it was undisputed that "the five gram dose [of

9  sodium thiopental] administered under the Arizona Protocol is eleven to eighteen times more

10  than that required to produce a loss of consciousness." *Dickens v. Brewer*, No. CV-07-1770-

11  PHX-NVW, 2009 WL 1904294, *11 (D. Ariz. Jul. 1, 2009).  Thus, the alleged discrepancy

12  between British and United States standards in terms of potency fails to set forth a plausible

13  claim.  Third, Plaintiff's allegations concerning problems with sodium thiopental obtained

14  from Great Britain are highly speculative.  He alleges twelve instances of adverse reactions,

15  including five relating to efficacy, but nowhere identifies with any factual specificity the

16  nature of the adverse reactions or lack of efficacy.  Similarly, even assuming as true the claim

17  that the substances imported from Dream Pharma are intended for animal, not human,

18  consumption, Plaintiff has not sufficiently plead a significant risk of harm from such facts.

19  In other words, Plaintiff's allegations are too vague to set forth a claim that injection of the

20  sodium thiopental acquired by the ADC, by itself, is "*sure or very likely* to cause serious

21  illness and needless suffering." *Baze*, 553 U.S. at 50; *see also Cook*, 2011 WL 902111 at *4

22  n.4 ("To the extent that Cook alleges that the process of administering a substance that is not

23  sodium thiopental, or is a diluted or adulterated version of sodium thiopental could itself

24  potentially cause him unconstitutional pain, he offers no factual support to support such an

25  assertion.").

26       In addition, the Ninth Circuit in *Cook* flatly rejected Plaintiff's complaint that

27  administration of allegedly incorrect, diluted or adulterated drugs would cause excruciating

28  pain when the other two drugs are administered.  2011 WL 902111 at *4.  In doing so, the

1    court referenced the numerous safeguards in Arizona's lethal injection protocol that ensure

2    an inmate's unconsciousness after administration of sodium thiopental. *Id.* These safeguards

3    were found constitutionally adequate by the court in *Dickens v. Brewer*, 631 F.3d 1139 (9th

4    Cir. 2011), which upheld Arizona's protocol. As was true in Plaintiff's initial action, nothing

5    in the instant Complaint "suggests that, even if he were to receive a substance that was not

6    sodium thiopental, or was diluted or adulterated and failed to properly anesthetize him,

7    Arizona's protocol would fail to identify the problem and halt the process to prevent the

8    administration of the pancuronium bromide and potassium chloride." *Cook*, 2011 WL

9    902111 at *4. Thus, Plaintiff has failed to state a facially plausible claim that use of the

10   sodium thiopental acquired by ADC is "*sure or very likely* to cause serious illness and

11   needless suffering" in violation of his Eight Amendment right to be free from cruel and

12   unusual punishment. *Baze*, 553 U.S. at 50.

13        **C.    Claim Two – Deliberate Indifference**

14        Plaintiff alleges that ADC's use of medical professionals who knowingly administer

15   a substance from a non-FDA-regulated foreign source are acting with deliberate indifference

16   in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual

17   punishment.

18        "[D]eliberate indifference to a prisoner's serious medical needs is the 'unnecessary

19   and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). An official

20   is deliberately indifferent if he both knows of and disregards an excessive risk to an inmate's

21   health. *Farmer*, 511 U.S. at 837. Thus, to demonstrate deliberate indifference, a plaintiff

22   must establish that the alleged harm was "sufficiently serious" and that the official acted with

23   a "sufficiently culpable state of mind." *Id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298,

24   302-03 (1991)). Mere negligence or medical malpractice does not establish a sufficiently

25   culpable state of mind. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980).

26        As found by the court in *Cook*, this claim is dependent on the sufficiency of Plaintiff's

27   first claim. Because Plaintiff "fails to make a facially plausible claim that the sodium

28   thiopental at issue here is '*sure or very likely* to cause serious illness and needless suffering'

or otherwise creates a 'substantial risk of serious harm' he cannot show that the medical officials administering the drug would be medically indifferent." *Cook*, 2011 WL 902111 at *5.

**IT IS THEREFORE ORDERED:**

(1)    Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. 2) is **GRANTED**.

(2)    As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $14.86.

(3)    Plaintiff's Complaint (Doc. 1) is **DISMISSED**. The Clerk of Court shall enter judgment accordingly.

(4)    The Clerk of Court shall forward a courtesy copy of this Order to Kent Cattani, Assistant Arizona Attorney General.

DATED this 27th day of March, 2011.

Robert C. Broomfield
Senior United States District Judge